UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CAROLETTE DANINE MEADOWS,

                         Plaintiff,

v.

KRISTINA LESH and
TAPESTRY CHARTER SCHOOL,

                        Defendants.

_____

**DECISION AND ORDER**

10-CV-00223(M)

      In accordance with 28 U.S.C. §636(c), the parties have consented to jurisdiction

by a United States Magistrate Judge [10].[1]  Before me is defendants' motion to dismiss plaintiff's

Amended Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(c) [42].  For the following reasons,

defendants' motion is granted in part and denied in part.


                    **BACKGROUND**

      The facts of this case were previously set forth in my Decision and Order dated

September 17, 2010 [11], in which I granted defendants' motion to dismiss without prejudice to

the filing of an Amended Complaint.  Plaintiff has since filed an Amended Complaint [13].[2]

      Defendants argue that the Amended Complaint should be dismissed because:

1) they are not state actors; 2) the Amended Complaint still fails to allege sufficient facts to

establish a constitutional violation; 3) the Amended Complaint does not allege that any

---

[1]      Braketed references are to the CM/ECF docket entries.

[2]      After plaintiff filed her *pro se* Amended Complaint, counsel was appointed to represent
her [36].

unconstitutional conduct was the result of an official custom or policy; and 4) defendant Kristina

Lesh is entitled to qualified immunity.  Defendants' Memorandum of Law [42-1].


## ANALYSIS

A.    **Dismissal Standard**

Rule 12(c) provides that "[a]fter the pleadings are closed - but early enough not to

delay trial - a party may move for judgment on the pleadings".  Rule 12(c).  "Courts faced with

motions under Rule 12(c) apply the same standard used to decide motions brought under Rule

12(b)(6)."  Matwijko v. Board of Trustees of Global Concepts Charter School, 2006 WL

2466868, *2 (W.D.N.Y. 2006) (Arcara, J./Schroeder, M.J.).


B.    **Plaintiff's Section 1983 Claim**

"In order to maintain a section 1983 action, two essential elements must be

present: (1) the conduct complained of must have been committed by a person acting under color

of state law; and (2) the conduct complained of must have deprived a person of rights, privileges,

or immunities secured by the Constitution or laws of the United States."  Pitchell v. Callan, 13

F.3d 545, 547 (2d Cir. 1994).


1.    **Color of State Law**

Defendants argue that as a matter of law, charter schools are not state actors.

Defendants' Memorandum of Law [42-1], pp. 3-7.  Construing the Amended Complaint

liberally, I conclude that plaintiff adequately alleges that defendants are state actors by alleging

2

that defendants acted "under color of law", that Tapestry Charter School ("Tapestry") "is a tuition-free Public School operating under the State University of New York Board of Trustees", and that Tapestry is "so involved with government as to be functioning as and indistinguishable from a public entity".  Amended Complaint [13], ¶¶2-4.

      As I indicated in my initial Decision and Order ([11], p. 5), although there is case law to the contrary, charter schools have been held to be state actors for purposes of Section 1983.  *See* Matwijko, 2006 WL 2466868 at *3-5 (denying defendants' motion to dismiss under Rule 12(c), where the court held defendant charter school was a state actor for the purposes of §1983); Scaggs v. New York State Department of Education, 2007 WL 1456221, *13 (E.D.N.Y. 2007) ("claims addressing the nature and quality of education received at charter schools may be properly brought against such schools and their management companies under Section 1983").

      Defendants rely heavily on the more recent New York State Court of Appeals decision in New York Charter Schools Association, Inc. v. DiNapoli, 13 N.Y.3d 120, 129 (2009), which held that the State Comptroller lacks authority to conduct audits of charter schools because they are not political subdivisions of the State.  However, this case did not address the distinct issue presented here, namely, whether a charter school is a state actor for purposes of a Section 1983 claim.  *See* Caviness v. Horizon Community Learning Center, Inc., 590 F.3d 806, 814 (9th Cir. 2010)("even if we had determined that an Arizona charter school was a political subdivision of Arizona for purposes of suits under the Fourteenth Amendment, such a determination would not resolve the question whether the state 'was sufficiently involved in causing the harm to plaintiff' such that we should treat [the charter school] as acting under color of state law").

As this court has previously recognized, the plain language of the Charter School

Act supports the notion that charter schools can be considered state actors:  "[T]he New York

statute provides that a charter school is an 'independent and autonomous *public school*'

performing 'essential public purposes and governmental purposes of this state' so as to 'provide

parents and students with expanded choices in the types of educational opportunities that are

available *within the public school system*.' N.Y. Educ. Law §§2850(2)(e) & 2853(1)(c) &

(d) . . . . In performance of their duties, charter schools must 'meet the same health and safety,

civil rights, and student assessment requirements applicable to *other public schools*.' N.Y. Educ.

Law §2854(1)(b)."  Matwijko, 2006 WL 2466868, *5 (emphasis in original).

Therefore, at this stage of the case, I am unable to conclude as a matter of law that

defendants are not state actors.


**2.      Violation of Plaintiff's Constitutional Rights**

      **a.      Free Exercise Clause**

As I indicated in my initial Decision and Order ([11], p. 6), "[n]ot every belief put

forward as 'religious' is elevated to constitutional status.  As a threshold requirement, there must

be some reasonable possibility 1) that the conviction is sincerely held and 2) that it is based upon

what can be characterized as theological, rather than secular *e.g.*, purely social, political or moral

views."  Stevens v. Berger, 428 F. Supp. 896, 899 (E.D.N.Y. 1977) (*citing* Wisconsin v. Yoder,

406 U.S. 205 (1972)).

The Amended Complaint alleges that "[p]laintiff is an adherent of the Pentecostal

Christian Faith", that she "was participating in a fast associated with First Holy Full Gospel

Baptist Church", and that "[f]asting is an integral part of the Pentecostal Faith and a sincerely

held belief of Plaintiff and her family".  [13], ¶¶7-9.  She also alleges that "[s]everal Bible

verses . . . support fasting", including "Matthew 6:16, Joel 1:14, Matthew 18:1-6, Luke 4:2"

and that "[f]asting is a symbol of  a person humbling him or herself before God to show that

he is sincerely seeking blessings".  Id., ¶¶12-13.

Defendants argue that "[s]ince plaintiff has not cited to any religious text or

observance detailing the parameters of the fast in which she and her daughter were participating,

or any explanation of its importance, the allegations in the amended complaint suggest that the

fast was exercise of personal preference, and not an obligation dictated by a sincerely held

religious belief".  Defendants' Memorandum of Law [42-1], p. 8.

I disagree with defendants.  Recognizing that determining the sincerity of

plaintiff's religious beliefs is a subjective rather than an objective inquiry (*see* Ford v. McGinnis,

352 F.3d 582, 589-90 (2d Cir. 2003)), I conclude that plaintiff has pled the sincerity of her

religious beliefs with sufficient particularity at this stage of the proceeding.

### b.      Equal Protection Clause

I previously dismissed plaintiff's Equal Protection claim, holding that "[w]ithout

identifying her religion or alleging that defendant were aware of her religion, plaintiff has not

sufficiently alleged facts demonstrating that defendant acted with an intent or purpose to

discriminate against plaintiff based upon her membership in a protected class".  Decision and

Order [11], p. 9.  Defendants argue that  the Amended Complaint remains deficient by failing to

allege that they were aware of plaintiff's Pentecostal faith.  Defendants' Memorandum of Law [42-1], p. 9.  I disagree with defendants.

The Amended Complaint alleges that "Principal Lesh stated that she would not honor my child's right to fast for religious reasons but would not interfere with similar conduct of an Islamic or Jewish child" and that she "stated that she had never heard of Christian children fasting" [13], ¶¶6, 18.  I find that these allegations are sufficient to allege that defendants were aware of plaintiff's faith, and to state an Equal Protection claim.

**D.     Official Custom or Policy**

Defendants seek to dismiss the claims against Tapestry by arguing that plaintiff fails to allege any facts demonstrating that their conduct resulted from an official custom or policy.  Defendants' Memorandum of Law [42-1], pp. 9-10.  In response, plaintiff argues that defendant Lesh's conduct represented official policy because she is Tapestry's principal.  Plaintiff's Memorandum of Law [46], pp. 13-14.  I agree with defendants.

"A municipality cannot be held liable under §1983 on a *respondeat superior* theory . . . .  Instead, it is when execution of a government's policy or custom . . .  inflicts the injury that the government as an entity is responsible under §1983."  <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 691, 694 (1978).  "Because respondeat superior liability is not permissible . . . the courts must apply rigorous standards of culpability and causation . . . to ensure that the indirect-causation theory not result in the municipality's being held liable solely for the actions  of its employee."  <u>Jeffes v. Barnes</u>, 208 F.3d 49, 61 (2d Cir. 2000), <u>cert.</u> <u>denied</u>, 531 U.S. 813 (2000).

A custom or policy may be established if the challenged conduct was engaged in by governmental officials responsible for establishing municipal policies.  *See* Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986).  "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy".  Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991).

I recognize that "[c]ourts in this Circuit have found that a school principal has final policymaking authority in the management of the school, and that the principal's conduct represents official district policy."  Williams v. Board of Education-City of Buffalo, 2008 WL 2946003, *3 (W.D.N.Y. 2008) (Curtin, J.).  However, Williams and the other cases cited by plaintiff (plaintiff's Memorandum of Law [46], p. 13) involve public school districts.  Unlike a public school, "[t]he board of trustees of [a] charter school [has] final authority for policy and operational decisions of the school", unless it delegates "decision-making authority to officers and employees of the school in accordance with the provisions of the charter".  N.Y.  Education Law §2853(f).

Thus, the Amended Complaint's allegation that defendant Lesh was Tapestry's principal, standing alone, is insufficient to establish that she had policymaking authority.  Without additional factual allegations that defendant Lesh, as principal, possessed policymaking authority, plaintiff have failed to allege a policy or custom sufficient to establish municipal liability.  Therefore, this aspect of defendants' motion to dismiss is granted.  *See* Asten v. City of Boulder, 652 F. Supp. 2d 1188, 1207 (D.Colo. 2009) ("[Plaintiff] has not alleged that [defendants] were in policymaking positions.  Therefore, her claims against [defendants] in their official capacities are dismissed").

Although plaintiff has not formally cross-moved to amend the Amended Complaint which she filed *pro se*, she seeks leave to file a Second Amended Complaint to correct any deficiencies in the current pleading.   Plaintiff's Memorandum of Law [46], pp. 17-18.  Since the Amended Complaint was submitted without the benefit of counsel, I will permit plaintiff to file a Second Amended Complaint in an attempt to correct this deficiency.   However, "[p]laintiff[] should keep in mind that this is the second time the Court is allowing plaintiff[] to amend.  Such permission should be taken very seriously and with consideration that the Court need not allow unlimited efforts to state a claim."  Henry v. Cuomo, 2008 WL 489258, *3 (W.D.N.Y. 2008) (Telesca, J.).


E.       **Defendant Lesh's  Entitlement to Qualified Immunity**

Defendants argue that the claims against defendant Lesh in her individual capacity should be dismissed on qualified immunity grounds because theAmended Complaint fails to allege facts demonstrating that she violated a clearly established constitutional right or that her conduct was objectively unreasonable.  Defendants' Memorandum of Law [42-1], pp. 10-16.[3]

"'Although a defendant may assert the defense of qualified immunity in a motion to dismiss, the Second Circuit has held that it is very difficult for such a defense to succeed at the pleading stage.' . . .  'The defense must be based on facts appearing on the face of the complaint.'"  Rivera v. Fischer, 655 F. Supp. 2d 235, 239 (W.D.N.Y. 2009) (Larimer, J.).

---

[3]       "[T]he *pro se* plaintiff does not specify whether he is suing the defendant in her official capacity, her individual capacity, or both. The Court will liberally construe the complaint as alleging both official and individual capacity claims." McCloud v. Kane, 491 F.Supp.2d 312, 316 (E.D.N.Y. 2007).

"Because the qualified immunity defense necessarily involves a fact-specific inquiry, '[i]t is generally premature to address the defense of qualified immunity in a motion to dismiss'". Bernstein v. City of New York, 2007 WL 1573910, *9 (S.D.N.Y. 2007). This case is no exception.

At this stage, the allegations of the Amended Complaint do not demonstrate as a matter of law that defendant Lesh is entitled to qualified immunity. However, this does not preclude defendants from later filing a properly supported motion for summary judgment seeking dismissal on this basis.

### CONCLUSION

For these reasons, defendants' motion to dismiss the Amended Complaint [42] is granted in part and denied in part as set forth herein. Plaintiff may file a Second Amended Complaint by October 21, 2011.

**SO ORDERED.**

DATED:        October 6, 2011

                                   /s/ Jeremiah J. McCarthy
                                   JEREMIAH J. MCCARTHY
                                   United States Magistrate Judge